**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SHARMIN SAEIDI,<br>Petitioner, | ) | |
| v. | ) | Case No. CIV-26-3095-R |
| MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security, et al.,<br>Respondents. | ) | |

## RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

Respondents Todd Blanche, U.S. Attorney General; Markwayne Mullin, U.S. Secretary of Homeland Security; and Robert Cerna, Field Office Director, U.S. Immigration and Customs Enforcement, Dallas Field Office. ("Respondents"),[1] pursuant to the Court's Order for Response (Doc. 6), respond to the Petition for Writ of Habeas Corpus ("Pet.") (Doc. 1) and submit that the Court should deny the Petition and enter an order of dismissal.

## FACTUAL BACKGROUND

### I. Immigration Proceedings

Petitioner Sharmin Saeidi, A# 221-044-318, is a citizen and national of Iran who entered the United States without inspection on March 29, 2025 and was "immediately apprehended by United States Border Patrol" and "has never lived at liberty within the United States following her apprehension." Pet. at ¶¶ 1, 28–29. As a result, Petitioner was placed into expedited removal proceedings because she was "apprehended within two years of the

[1] Respondent Warden, Diamondback Correctional Facility is not a federal official, and any response is therefore not filed on his/her behalf.

subject's last entry into the United States and within 100 miles from the United States/Mexico international boundary." Exhibit 1, March 30, 2025 I-213 Narrative at 2; Exhibit 2, Notice and Order of Expedited Removal.

Following a credible fear interview, Petitioner was placed in removal proceedings on September 9, 2025. Exhibit 3, September 9, 2025 Notice to Appear. On November 20, 2025, an Immigration Judge granted DHS's Motion to Pretermit Respondent's Applications for Asylum, Withholding of Removal, and Protections Under the Convention Against Torture and ordered Petitioner removed from the United States to Iran. Exhibit 4, November 20, 2025 IJ Order. On December 12, 2025, Petitioner timely appealed the removal order. Exhibit 5, December 18, 2025 Filing Receipt for Appeal. The appeal remains pending before the BIA.

Thereafter, days after filing this instant Petition, Petitioner—through the same counsel of record in this case—requested a custody redetermination hearing pursuant to 8 C.F.R. § 1236, but the request was ultimately withdrawn. Exhibit 6, November 5, 2026 IJ Bond Order.

**II. Previous Writ of Habeas Corpus Proceeding**

On January 16, 2026, Petitioner filed a Petition for Writ of Habeas Corpus in the Southern District of Texas. *Saeidi v. Bondi*, No. 1:26-CV-114 (S.D. Tex.) (Doc 1) ("*Saeidi I*"); *see also* Doc. 1-2. There, Petitioner likewise argued that she was most properly classified as being detained pursuant to 8 U.S.C. § 1226(a), and as a result, her continued detention was unlawful, and her immediate release was warranted. Doc. 1-2 at 12. Thereafter, on July 21, 2026, the court issued a Report and Recommendation finding (1) that "Petitioner's challenge to the statutory authority under which she is detained fails, because Petitioner is detainable under 8 U.S.C. § 1225(b)(2)"; and (2) the "challenge to her detention while her appeal to the

BIA remains pending fails because 'during removal proceedings,' even where such detention is without a bond hearing, is 'generally a permissible part of that process.'" Doc. 1-3 (quoting *Demore v. Kim*, 538 U.S. 510, 531 (2003)). On August 4, 2026, the court adopted the Report & Recommendation. Doc. 1-4.

On August 19, 2026, Petitioner filed an Opposed Motion to Amend Judgment on the basis that she has been subject to excessively prolonged detention and the Report and Recommendation "declined to reach a constitutional inquiry that the record squarely presented." *Saeidi I*, No. 1:26-CV-114 (Doc. 18); Exhibit 7, August 19, 2026 Motion to Amend Judgment. On November 13, 2026, Respondents in that case filed their Response[2] to the Motion, which remains pending. *Saeidi I*, No. 1:26-CV-114 (Doc. 20).

## ARGUMENT

This Petition for Writ of Habeas Corpus should be denied for three reasons: (1) Petitioner has abused the writ by filing duplicative Petitions in multiple federal districts; (2) in any event, Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1); and (3) Petitioner's due process claims fail.

### I. Petitioner's Duplicative Petition Should be Dismissed While Her First Petition Remains Pending.

"Where . . . a petitioner files multiple § 2241 petitions, the later-filed cases generally proceed in one of two ways." *Salib v. Figueroa*, No. CIV-26-1250-D, 2026 WL 2393174, at *1 (W.D. Okla. Aug. 17, 2026) (quoting *Lazare v. De Anda-Ybarra*, No. 2:26-CV-00808-KG-KK, 2026 WL 2071154, at *1 (D.N.M. July 17, 2026)). "If the first § 2241 case is still pending, the

[2] On the docket, the Response (Doc. 20) is labeled "Motion to Alter Judgment." However, Document 20 is Respondents' Response to Petitioner's Motion to Alter Judgment (Doc. 18).

later filed petition may be dismissed as duplicative and without prejudice" and "[t]he petitioner is then free to continue prosecuting claims in [her] . . . existing § 2241 case." *Id.; see also Lazare*, 2026 WL 2071154, at *1 (collecting cases dismissing duplicate § 2241 immigration petitions).

The abuse-of-the-writ doctrine permits courts to dismiss successive § 2241 claims that were raised in a prior petition as well as new "claims [that] could have been raised in an earlier [petition] but were not." *Stanko v. Davis*, 617 F.3d 1262, 1270 (10th Cir. 2010); *see also Petrocelli v. Angelone*, 248 F.3d 877, 884 (9th Cir. 2001) (noting "that generally the abuse of the writ doctrine forbids the reconsideration of claims that were or could have been raised in a prior habeas petition") (internal quotation omitted). When the government pleads abuse of the writ by noting the petitioner's prior writ history, identifying [her] abusive claims, and alleging that [s]he has abused the writ, "[t]he burden to disprove abuse then becomes petitioner's." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). To satisfy his burden, the petitioner must show cause for failing to raise a claim in an earlier action and prejudice therefrom, and if the petitioner cannot show cause, "the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim." *Id.* at 494–95. According to the Supreme Court, the "miscarriage of justice" standard is a high bar. One who claims a miscarriage of justice must show "the kind of egregious error that would bring the judicial system into disrepute." *Hunter v. United States*, 608 U.S. 713, 727 (2026). "The error must be obvious—not one a judge could reasonably make," and the error must be of the type that would undermine public confidence in the judiciary. *Id.* Petitioner does not meet her burden.

Although the prior habeas proceeding remains pending in the Southern District of

Texas[3], dismissal is nonetheless warranted. As a practical matter, the issues raised in this Petition, namely, Petitioner's entitlement to a bond hearing and the constitutionality of her prolonged detention, have already been decided in that Court and are currently being relitigated there. Moreover, a prior merits determination is not a prerequisite to applying the abuse-of-the-writ doctrine. *Reynolds v. Saad*, No. 1:17CV124, 2018 WL 3374155, at *4 (N.D. W.Va. July 11, 2018), *aff'd*, 738 F. App'x 216 (4th Cir. 2018); *Feaster v. Beshears*, 56 F. Supp. 2d 600, 607 (D. Md. 1999), *aff'd*, 208 F.3d 208 (4th Cir. 2000). Instead, a determination on the merits is "simply … an important factor that informs the district court's discretion in applying the abuse of the writ doctrine." *Farmer v. McDaniel*, 98 F.3d 1548, 1549 (9th Cir. 1996). It is not a dispositive factor, and courts applying abuse-of-the-writ principles "retain broad powers to prevent duplicative or unnecessary litigation." *Slack v. McDaniel*, 529 U.S. 473,478 (2000). This case presents precisely the type of duplicative litigation those principles are intended to prevent.

Petitioner argues that Texas court's prior order "does not, by itself, bar this Petition as an abuse of the writ." Pet at 10, ¶¶ 52–64. According to Petitioner, the relevant circumstance has changed because she "is now detained within the Tenth Circuit" and "[t]he difference in governing circuit court authority is material." *Id.* at ¶¶ 54–55. Indeed, Petitioner expressly frames *this* Petition as a challenge asking the Court to once again "determine whether further

[3] "It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Santillanes v. U.S. Parole Com.*, 754 F.2d 887, 888 (10th Cir. 1985). By Petitioner's own admission, "most of" her period of detention was served in the Southern District of Texas. Pet. at ¶ 3. As a result, jurisdiction attached to, and did not divest from, the Southern District of Texas in *Saeidi I* upon Petitioner's transfer to the Western District of Oklahoma.

confinement after eighteen months requires the government to establish its necessity by clear and convincing evidence or requires immediate release." *Id.* at ¶ 61. She therefore contends that Respondents' "reliance on that judgment should not displace the inquiry required by the current circumstances of her detention and the constitutional protections sought." *Id.* at ¶ 63. Notably however, Petitioner does not identify any substantive distinction between the claims now before this Court and those currently pending before the Southern District of Texas. To the contrary, the relief sought and the legal questions presented are materially identical.

Equally significant, Petitioner has failed to demonstrate that declining to entertain this duplicative Petition would result in a fundamental miscarriage of justice. Her claims are already before a district court judge in the Southern District of Texas. *See* Exhibit 7, August 19, 2026 Motion to Amend Judgment. As discussed above, Petitioner has asked the Court to reconsider its order adopting an R&R on the ground that it allegedly failed to address her prolonged detention claim. *Id.* The Court ordered a response, Respondents complied, and the matter has been submitted to the court for consideration. *Saeidi I*, 1:26-CV-114 (S.D. Tex.) (Docs. 18, 19, 20).

While Petitioner may contend that the length of her detention independently creates a requiremenet for this Court's involvement, Petitioner does not point to any circumstances—apart from the purportedly more favorable Tenth Circuit precedent governing § 1226(a)—that would support such a conclusion. She points to no imminent harm, changed factual circumstance, or other consequence warranting parallel review while another court of competent jurisdiction is actively considering the same issues. Indeed, the record suggests that

Petitioner previously sought (and withdrew) a request for the very bond hearing she maintains she is due. Exhibit 6, November 5, 2026 IJ Bond Order.

Accordingly, because Petitioner's claims are already being litigated in the Southern District of Texas and because she has not shown that dismissal would result in a fundamental miscarriage of justice, the Court should dismiss this action as an abuse of the writ.

## II. Petitioner is Subject to Mandatory Detention Under 8 U.S.C. § 1225(b)(1).

Section 1225(b)(1) provides for expedited removal of *both* "arriving aliens" and "other aliens." Expedited removal, as the name suggests, authorizes the rapid removal of certain noncitizens that generally includes two groups: first, those "arriving in the United States," 8 U.S.C. § 1225(b)(1)(A)(i); and second, those in the United States who were not admitted or paroled and who cannot show continuous physical presence for at least two years, if the Secretary of Homeland Security so designates—which occurred. *Id.* § 1225(b)(1)(A)(iii).[4]

The expedited-removal process begins with an inspection by an immigration officer. If the officer finds the noncitizen inadmissible and no exception applies, the officer must order removal without a hearing before an immigration judge and without ordinary administrative review. *Id.* § 1225(b)(1)(A)(i). If a noncitizen expresses fear of persecution or torture, or an intent to apply for asylum, the alien is referred to a non-adversarial "credible fear" interview with an asylum officer who decides whether there is a significant possibility that the alien could

[4] As is relevant here, the Secretary designated noncitizens that (i) are physically present in the U.S. without having been admitted or paroled, (ii) are encountered by an immigration officer within 100 air miles of any U.S. international land border, and (iii) cannot establish that they have been physically present in the U.S. continuously for the 14-day period immediately prior to the date of encounter. *See* Designating Aliens for Expedited Removal, 69 Fed. Reg. 48,877, 48,880 (Aug. 11, 2004) ("2004 Designation").

establish eligibility for asylum or related protection. 8 C.F.R. §§ 208.30(e), 235.3(b)(4); 8 U.S.C. § 1225(b)(1)(A)(ii). Significantly, if credible fear is found, the noncitizen must be detained for further consideration of the asylum application. 8 U.S.C. § 1225(b)(1)(B)(ii) & (b)(1)(B)(iii)(IV). The noncitizen may be placed into regular (non-expedited) removal proceedings before an immigration judge or USCIS may retain jurisdiction over the asylum application moving forward. *Id.*

Petitioner is lawfully (and mandatorily) detained pursuant to section 1225(b)(1) and is thus ineligible for the bond hearing she seeks. As detailed above, Petitioner arrived at the border and was encountered almost immediately, placed into expedited removal proceedings, and has remained in ICE custody since. Pet. at ¶¶ 1, 28–29, Exhibit 1, March 30, 2026 I-213 Narrative at 2. At this point, the INA states that Petitioner "*shall be detained* for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added). By regulation, that "further consideration" takes the form of full removal proceedings under section 240 of the INA. 8 C.F.R. §§ 208.30(f), 1208.30(g)(2)(iv)(B).

**III. Petitioner's Due Process Claims Fail.**

The Petition is, at its core, a challenge to Petitioner's alleged prolonged detention. Petitioner contends that the duration of her detention violates due process and entitles her to immediate release or to a bond hearing at which the government bears the burden of proving that continued detention is justified.

In Count I, Petitioner alleges that her continued detention without a constitutionally adequate individualized review violates the Fifth Amendment Pet. at ¶¶ 65–71. In Count II, she argues that the balancing test set forth in *Mathews v. Eldridge* requires, at a minimum, a bond

hearing in which the government bears the burden of demonstrating that she presents either a flight risk or a danger to the community. *Id.* ¶¶ 72–82.

Counts III and IV largely reiterate that argument. Petitioner maintains that, now that she is detained within the Tenth Circuit, an ordinary bond hearing would be constitutionally inadequate and that any hearing ordered by the Court must place the burden of proof on the government. *Id.* ¶¶ 83–94. Finally, in Count V, Petitioner asserts that the appropriate remedy is either immediate release or a bond hearing at which the government bears the burden of justifying her continued detention.

For the reasons discussed below, Petitioner's arguments lack merit and should be denied.

**A. Petitioner's due process claims fail.**

Petitioner "challenges the constitutional sufficiency of maintaining that confinement for eighteen months without a meaningful individualized determination of custody" violates due process. *Id.* at ¶ 68 (Count I). In support, Petitioner maintains that "the passage of time is central" and that her detention "does not necessarily remain adequate after eighteen months of uninterrupted custody." *Id.* at ¶ 69. But this is where Petitioner's prolonged detention claim begins and ends. Indeed, Petitioner "does not assert that time alone automatically makes every immigration detention unlawful" and instead merely suggests that "due process requires examination of whether detention remains necessary and whether the procedures employed adequately protect against error." *Id.* at ¶ 71.

This suggestion of a due process violation is insufficient to warrant Petitioner's release, especially where 8 U.S.C. § 1225(b)(1) is silent as to the proper duration of mandatory

detention. Section 1225(b)(1) is unequivocal: if a noncitizen is placed in expedited removal as an arriving alien, they "*shall* be detained pending a final determination of credible fear of persecution, and if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) (emphasis added).

**B. If the Court orders a bond hearing, the burden should not be shifted.**

Petitioner's remaining claims focus on the proper burden of proof should the Court order a bond hearing. *See* Pet. at Counts II, III, IV, V. Petitioner applies the *Mathews* factors to support her position that due process requires a shifted burden.

But the remand in *Jennings* did not include instructions to apply *Mathews'* analysis. *See also Dusenbery v. United States*, 534 U.S. 161, 167–68 (2002) ("Although we have since invoked *Mathews* to evaluate due process claims in other contexts, we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." (cleaned up)). Instead, to assess the merits of Petitioner's constitutional claims, it is necessary to first determine what due process rights Petitioner possesses. Petitioner has not been admitted to the U.S., and for any noncitizen who has not been admitted into the country, the INA provides the only process due under the Constitution. *Dept. of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 138–40 (2020); *see also Demore*, 538 U.S. at 523 ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." (cleaned up)).

Indeed, the Supreme Court has described "our century-old rule" as:

> [T]he power to admit or exclude aliens is a sovereign prerogative; the Constitution gives the political department of the government plenary authority

> to decide which aliens to admit; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted.

*Thuraissigiam*, 591 U.S. at 139 (cleaned up); *see also U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.").

But even under that three-part *Mathews* test, Petitioner is not entitled to a burden-shifted bond hearing or release.[5] As to the first factor, while liberty is of paramount importance, it is limited in this context. The Supreme Court has emphasized that "detention during deportation proceedings [remains] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. Any assessment of the private interest at stake therefore must account for the fact that the Supreme Court has never held that noncitizens have a constitutional right to be released from custody during the pendency of removal proceedings, and in fact has held precisely the opposite. *See id.* at 530. Petitioner entered this country in violation of its laws. *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1292 (10th Cir. 2001) ("Moreover, the procedural safeguards are minimal because aliens do not have a constitutional right to enter or remain in the United States."). Thus, "the due process rights at issue" here are "more limited liberty in the United States by someone no longer entitled to remain in the country." *Montoya v. Holt*, No. CIV-25-01231-JD, 2025 WL 3733302, at *14 (W.D. Okla. Dec. 26, 2025) (citing *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999)). Moreover, Petitioner has the power

[5] Indeed, as described above, Petitioner is not entitled to a bond hearing at all as she is subject to 8 U.S.C. § 1225(b)(1) mandatory detention. Respondents' engagement with *Mathews* is only in the alternative and should only be considered if the Court determines a bond hearing is required in the first instance.

to free himself. *See Richardson v. Reno*, 180 F.3d 1311, 1317 n.7 (11th Cir. 1999) (unlike criminal cases, immigration detention "is not entirely beyond [the noncitizen's] control; he is detained only because of the removal proceedings, and he may obtain his release any time he chooses by withdrawing his application for admission and leaving"), *overruled on other grounds by INS v. St. Cyr*, 533 U.S. 289, 312-13 (2001).

As to the second factor, regarding the potential for erroneous deprivation, Petitioner contends that requiring her to prove two negatives creates a substantial risk of error. In support, Petitioner contends that because "[s]he cannot produce years of domestic employment or community participation because her confinement has prevented" it, she is at a disadvantage before an Immigration Judge. Pet. at ¶ 76. But "the Fifth Amendment Due Process Clause is not offended by leaving the burden of proof of the noncitizen in a § 1226(a) bond hearing." *Pupo Socarras v. Figueroa*, No. CIV-26-0571-HE, 2026 WL 2100499 at *1 (W.D. Okla. July 21, 2026). Indeed, this Court should "decline[] to issue an advisory opinion instructing the Immigration Judge to apply a particular burden of proof." *Singh v. Gantt*, No. CIV-26-1113-R at Order (Doc. 20) (W.D. Okla. July 23, 2026) (quoting *Imani v. Lyons*, No. CIV-26-566-J, 2026 WL 1896142 at *1 n.1 (W.D. Okla. July 1, 2026)). As a result, the risk of erroneous deprivation of Petitioner's due process rights—should the Court grant her a standard bond hearing—is low.

Finally, the government's interests, and the fiscal and administrative burdens of using a different scheme, are substantial and strongly weigh against Petitioner's claim. A court "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21,

34 (1982). Additionally, "[t]here is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings [Congress] established, and permit[s] and prolong[s] a continuing violation of [U.S.] law." *Nken v. Holder*, 556 U.S. 418, 436 (2009); *see Landon*, 459 U.S. at 34 ("The government's interest in efficient administration of the immigration laws . . . is weighty.").

**CONCLUSION**

Petitioner has abused the writ, and on this basis alone, dismissal is warranted. If, however, the Court reaches the merits of the Petition, it should be denied because Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) and her due process claims fail.

ROBERT J. TROESTER
United States Attorney
*s/ Ellen Carr*
ELLEN CARR, OBA #36074
Assistant U.S. Attorney
United States Attorney's Office
Western District of Oklahoma
210 Park Avenue, Suite 400
Oklahoma City, OK 73102
(405) 553-8836
Ellen.Carr@usdoj.gov

*Attorney for Respondents*